IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eugene Division

JULIE A. WALTERS,                          )
                                           )
            Plaintiff,                     )
                                           )          6:13-CV-00041-JO
      v.                                   )
                                           )
CAROLYN W. COLVIN, Acting Commissioner of  )          OPINION AND ORDER
Social Security,                           )
                                           )
_____Defendant._____ )

JONES, J.,

      Plaintiff Julie Walters appeals the Commissioner's decision denying her application for

disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction

under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

      Walters applied for disability insurance benefits alleging she became disabled in June 1999,

due to chronic pain, myofascial pain syndrome, and fibromyalgia. Admin. R. 79. For reasons that

do not matter in this appeal, the case has a long procedural history, including four administrative

hearings, each followed by a determination that Walters was not disabled. The fourth determination

became the Commissioner's final decision and is now before me in this appeal.

The ALJ correctly determined that the relevant time for Walters's claim ended on March 31, 2008, when her insured status under the Social Security Act expired. To prevail on her claim, Walters must show that she was disabled on or before that date. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ found that during the relevant time, Walters's ability to perform basic work activities was limited by chronic pain, epicondylitis, degenerative joint disease of the right knee, depression, anxiety, and dependence on narcotic pain medications. The ALJ found that, despite these impairments, Walters retained the residual functional capacity ("RFC") to perform unskilled work involving only routine tasks, light exertion, limited postural and climbing activities, and no more than superficial interaction with the general public. The vocational expert ("VE") testified that a person having Walters's RFC could perform the activities required in light, unskilled occupations such as small products assembler, parking lot attendant, and office assistant, and that those occupations represented hundreds of thousands of jobs in the national economy. The ALJ therefore concluded that Walters was not disabled within the meaning of the Social Security Act during the relevant time.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). Substantial evidence may be less than a preponderance of the evidence. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006). Under this standard, the

court must consider the record as a whole, and uphold the Commissioner's factual findings that are supported by inferences reasonably drawn from the evidence even if another interpretation is also rational. *Robbins*, 466 F.3d at 882; *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.   Claims of Error

Walters contends the ALJ improperly discounted her credibility, gave insufficient weight to the medical opinions of Paul Chung, M.D., Karyn Ofa, D.O., and William Melcher, M.D., and rejected a vocational evaluation report from a rehabilitation counselor. Walters argues that these errors led the ALJ to improperly conclude that she did not satisfy the criteria for presumptive disability under the regulatory Listing of Impairments and to assess her RFC in a manner that did not accurately reflect all of her actual limitations. Pl.'s Br. 21-22.

### II.   Credibility Determination

The ALJ found that Walters's impairments could reasonably be expected to produce some of the symptoms she alleged but that she lacked credibility regarding the extent to which her symptoms limited her ability to function. Admin. R. 43. The ALJ accepted that Walters experienced chronic pain and acknowledged that she had been diagnosed with fibromyalgia, myofascial pain syndrome, epicondylitis, degenerative changes in the right knee joint, depression, anxiety, and dependence on narcotic medications. Admin. R. 29. He also believed these impairments imposed significant limitations on Walters's ability to work, as reflected in the RFC assessment. Admin. R. 33.

The ALJ found that Walters was not credible in her claims of functional limitations beyond those in the RFC assessment, including those summarized here. Admin. R. 43. Walters's claimed profound physical limitations that left her essentially bedridden. Admin. R. 325, 328, 1417. She often described the intensity of her chronic pain as unbearable or 10/10 on the pain scale, which commonly denotes pain that is beyond excruciating. Admin. R. 531, 547, 572, 581. She said her pain caused daily agony and made any activity a struggle. Admin. R. 325, 338. She told a consultant her pain was so severe that she could not sit for one minute, stand for 20 minutes, or walk 100 feet. Admin. R. 372. She said constant pain left her barely able to walk and made sitting for any length of time difficult. Admin. R. 1319, 1418. Walters said she could barely lift a cup of coffee. Admin. R. 338. She alleged she could not retain information because she suffered from "fibro fog." Admin. R. 338. She said she had difficulty remembering to take her medications. Admin. R. 774. At other times, Walters said she could sit or stand for no more than 30 minutes and lift no more than a gallon of milk. Admin. R. 34.

An adverse credibility determination must include specific findings supported by substantial evidence and clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti*, 533 F.3d at 1039.

The ALJ found Walters's subjective statements about her limitations were not credible in light of the objective and clinical medical findings, evidence that she engaged in activities that were inconsistent with her claimed limitations, drug seeking behavior that suggested her subjective statements about pain were unduly motivated by her dependence on narcotics, and her repeated

requests for specific treatment procedures based on her independent view of her medical condition and failure to follow more appropriate therapies recommended by her physicians. Admin. R. 34-35, 39-43.

The ALJ found that the medical evidence in the record suggested only moderate limitations, contrary to the profound physical limitations Walters alleged. This conclusion is supported by the treatment records of physicians in various specialties which revealed only normal, benign, and mild diagnostic findings with very little suggestion of functional limitation. The ALJ could reasonably expect that the profound functional limitations Walters alleged would be revealed in the examinations and clinical observations of her physicians. As the following summary shows, such findings cannot be found in the medical records.

At the alleged onset of disability, Walters's primary complaint was chronic neck pain for which she had been receiving increasing amounts of short acting narcotic pain medication for a couple of years. Admin. R. 581. Physical examinations were essentially normal, with free and easy range of motion. Diagnostic imaging and nerve conduction studies were negative for findings that would account for her neck symptoms. Her physicians recommended conservative treatment with physical therapy, exercise, and a tricyclic antidepressant, but Walters insisted that only Percocet helped. Admin. R. 167, 580-84.

Walters then had a rheumatology evaluation by William Melcher, M.D., who found she had full ranges of motion, no spasm, little significant tenderness, a negative MRI, and normal blood laboratory test results. He concluded there was no rheumatological basis for her pain. Admin. R. 163-64. Walters then underwent a physiatry consultation which revealed no musculoskeletal basis for her pain. She had full painless range of motion and all objective findings and imaging were

completely normal.  At that time, she did not have the muscular tenderness that would support a diagnosis of fibromyalgia or myofascial pain syndrome.  Her physicians concluded she had no medical condition that was keeping her from working. Admin. R. 161, 565. Walters then underwent a psychiatric evaluation.  She reported a subjective history of panic attacks, but Rory Green, M.D., found no current sign of depression, anxiety, or any other affective disorder and no cognitive deficit. Admin. R. 159-60.  In physical therapy, Walters continued to complain of severe pain, but she had full ranges of motion and clinical findings were benign except for some tenderness with palpation. Admin. R. 220.  At an orthopedic follow up consultation, Walters had good range of motion in the neck and had no tender point pain.  Admin. R. 563.

In January 2000, primary care physician Sheila Jhansale, M.D., observed that Walters had been seen by specialists in occupational health, physical therapy, physiatry, rheumatology, orthopedics, and psychiatry without remarkable findings other than manifestations of manipulative behavior to obtain short term narcotic pain medications.  Dr. Jhansale observed that Walters had been "requesting disability, but functions okay."  She gave Walters a referral to addiction medicine for evaluation and treatment of her dependence on short term narcotics.  Admin. R. 555.

In March 2000, Walters brought copies of internet articles about fibromyalgia to Dr. Jhansale's office to support her request for short acting narcotics, which Dr. Jhansale refused. Admin. R. 208, 550.  Soon after, Walters changed primary care physicians and began seeing Paul Chung, M.D., to whom she appeared "intent on getting short acting Percocet." Admin. R. 549.  In July 2000, Paul Jacobs, M.D., performed another physiatry evaluation.  He diagnosed fibromyalgia syndrome, but did not identify any functional limitations.  Walters's physical examination was essentially normal except she had developed tenderness in the fibromyalgia trigger points and some

muscle tension. Dr. Jacobs recommended conservative behavioral therapies such as yoga, tai chi, and meditation instead of treatment with narcotics. He specifically noted that short acting narcotics would not be a recommended therapy for fibromyalgia. Admin. R. 545-47.

In September 2000, Victoria Carvalho, M.D., examined Walters for complaints of total body pain. Walters said she could not sit for one minute, stand for 20 minutes or walk 100 feet, but Dr. Carvalho's clinical findings were completely benign. Dr. Carvalho noted positive Waddell's signs suggesting a nonorganic cause for Walters's symptoms. She did not make clinical findings of functional limitation. Admin. R. 372-75.

In October 2000, Duane Kolilis, Ph.D., performed a psychodiagnostic evaluation. Walters denied depression but said she had problems with memory, attention, and concentration. Dr. Kolilis observed that Walters exhibited pain behaviors that appeared to be exaggerated and to reflect specific knowledge from the internet of the diagnostic criteria for fibromyalgia. He believed Walters gave insincere effort on formal assessment, but her memory and arithmetic calculation scores were good. Dr. Kolilis diagnosed anxiety with depressed mood, pain disorder, and dependence on prescription opiates. He said a physical capacities examination would be needed to obtain reliable information about her true functional limitations, suggesting Walters did not provide a valid presentation. Admin. R. 376-81.

In February 2001, Walters injured her knee in a snowmobiling accident. She had mild swelling but otherwise her examination was normal. Admin. R. 514-15. In May 2001, William McGarey, M.D., performed an arthroscopic exploration procedure which revealed no acute damage in the knee. Admin. R. 597-98. Dr. McGarey recommended conservative treatment with glucosamine and vitamins. Admin. R. 514. In October 2001, Walters complained of right elbow

pain. On examination, Dr. Chung found only localized tenderness and giveway weakness. Admin. R. 512.

In May 2002, Walters returned to Dr. Chung at the urging of her lawyer after the remand of an unfavorable disability determination. She told Dr. Chung she was working part time at a mercantile store. Her primary complaint was profound fatigue with aches in her neck, lower back, and hips. On physical examination, Dr. Chung found mild tender spots over the trapezius and posterior neck, but not much tenderness at the other trigger points. He did not indicate any functional limitation. Admin. R. 495-96. Walters then saw Dr. McGarey for a follow up regarding hip pain associated with her previously injured knee. Dr. McGarey found no evidence of radiculopathy, bursitis, or arthritis of the hips. Walters had slight tenderness, but nothing to account for her complaints. Admin. R. 492, 495.

In July 2002, Walters saw Dr. Chung for treatment and to obtain a letter for her disability lawyer. She complained of fatigue and constant pain with prolonged standing and sitting at her part time job. Dr. Chung's physical examination was generally unremarkable indicating full ranges of motion, mild insignificant tenderness in places and a negative straight leg raise test. Admin. R. 344-45. In September 2002, Walters saw another orthopedic surgeon for a second opinion regarding her knee pain, but his review of Dr. McGarey's arthroscopic findings and a repeat MRI study showed nothing significant. Admin. R. 480.

In April 2003, Walters saw Dr. McGarey for continuing right knee pain. She said she could no longer walk on her right leg and driving was painful. She had a handicapped parking permit to help with her mobility problems. MRI studies of her knees, back, and hips were negative. Dr. McGarey made no mention of functional limitations. Admin. R. 454-55.

In January 2007, Walters saw a gastroenterologist for complaints of lifelong bowel problems. His examination was normal, but Walters requested a colonoscopy which was also normal. Admin. R. 835-36, 993. Walters then saw Dr. Chung to discuss her opiate therapy plan. She said she had been using extra pain medication because of calf pain from using the treadmill and elliptical machine at the gym. On examination, Dr. Chung found no swelling or tenderness. He did not indicate any functional limitation. Admin. R. 834.

In April 2007, Walters began bereavement counseling after her sister died. Admin. R. 974-76. She established primary care with Karyn Ofa, M.D., because Dr. Chung was no longer available. Dr. Ofa noted that Walters was overusing short acting opiate medications in addition to her long acting morphine prescription, reportedly due to increased pain from going to the gym twice a day. Admin. R. 833. Walters saw Dr. Ofa in May 2007 for a flare up of back pain after painting a house with her husband. Dr. Ofa found some tenderness and paraspinal muscle tightness, but Walters had full range of motion and diagnostic imaging of the spine showed only mild degenerative changes without acute abnormalities. Admin. R. 831, 1146.

In February 2008, Walters saw Dr. McGarey again for right leg pain from the knee to the hip. His physical examination was normal except for tenderness at the tronchater. Diagnostic imaging of the knees showed little change, with only mild degeneration. Imaging of the hips was normal. Dr. McGarey gave Walters a cortisone shot and recommended home stretching. Admin. R. 907-08, 1144.

This was the extent of the pertinent medical evidence when Walters's insured status under the Social Security Act expired on March 31, 2008. The remaining medical records from the relevant period reflect routine health care, numerous frequent communications regarding medication

management, primarily emails and telephone calls explaining her numerous requests for early Percocet refills, and communications regarding her disability claims for social security benefits, abatement of student loans, and handicapped parking permits.

In June 2008, Ronald Smith, Ph.D., performed a psychological evaluation of Walters. Dr. Smith reported he did not observe any abnormalities in her posture, gait, movements, or mood. His mental status examination was normal except Walters became tearful due to frustration while engaged in memory testing. She said she had to write everything down in order to remember. On formal memory testing, however, Walters scored in the average range. Walters scored in a highly variable pattern ranging from borderline to average on different scales of intelligence tests. She endorsed a high number of depression symptoms on a depression inventory. Dr. Smith diagnosed mild depression with mild anxiety. With respect to functioning, Dr. Smith opined that Walters might be somewhat distractible in work settings due to her somatic pain and might have some slowness if required to change work activities or adjust to non-routine work patterns. Admin. R. 804-09.

In July 2008, Natalie Zaharoff, D.O., reviewed Walters's medical records and performed a physical examination. Dr. Zaharoff noted that Walters sat comfortably during the examination and could change positions, remove and put on her shoes, and get on and off the examination table without difficulty. She had full ranges of motion throughout. Straight leg raising, muscle strength, bulk and tone, sensory exam, and reflexes were all normal. Walters had sufficient tender points to support a fibromyalgia diagnosis. Nonetheless, with respect to functioning, Dr. Zaharoff found no objective basis for any restriction in standing, walking, sitting, lifting, engaging in postural activities such as bending, stooping or crouching, or on manipulative activities such as reaching or grasping. Admin. R. 818-22.

The ALJ could reasonably find that the absence of clinical observations of functional limitations or abnormal objective findings in these medical records conflicts with Walters's subjective complaints of constant excruciating pain that leaves her with the profound limitations she claimed in sitting, standing, walking, bending, lifting, and retaining information. Such a conflict supports an adverse inference that undermines the claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999). The absence of medical evidence regarding the severity of symptoms cannot be the sole basis for discrediting subjective statements, but it remains a proper factor in the credibility analysis from which reasonable inferences may be drawn. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007); *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ found that Walters's activities during the relevant period showed functional abilities exceeding the limitations she alleged. Admin. R. 31-32, 43. The ALJ found that Walters engaged in work activities during the relevant period. Admin. R. 28-29. This is supported by her earnings records and statements to physicians in which she referred to her employment. Admin. R. 167, 208, 494, 495-96, 527, 582-83, 847, 864, 1046, 1051, 1063, 1069, 1073, 1083-84. Although these part time jobs are not equivalent to sustained full time work, they are inconsistent with the extreme limitations Walters alleged. Such inconsistencies between a claimant's subjective statements and conduct provide a basis to discount the claimant's credibility. *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).

In addition, Walters traveled extensively during the relevant period, flying to the east coast and Las Vegas, moving frequently between Oregon and Arizona, and driving to and from cities where her husband built houses, including Roseburg, Portland, Waldport, and Bend, Oregon, and

Lake Havasu, Arizona. Admin. R. 378, 440, 544, 831, 841, 905, 942, 944, 954, 988, 989, 1004, 1067, 1401. Walters often sought additional narcotics for increased pain after activities such as boat trips, a snowmobile trip, long drives, packing and moving her household, readying houses for sale, painting, crabbing, and working out at the gym. Admin. R. 159-60, 514-15, 524, 543-44, 548, 555, 649, 833-34, 840, 1015. The ALJ could reasonably expect that a person with the limitations Walters claimed would not engage in these activities. Accordingly, he could reasonably draw an adverse inference as to the credibility of Walters's claims from her participation in such activities.

Similarly, Walters alleged that physical limitations, impaired memory and concentration, and "fibro fog" made it difficult for her to type, sit at a computer, write, retain information, and keep track of when to take her medications. Admin. R. 325, 326, 335, 338, 774, 777. The record includes numerous letters and emails that show she was capable of writing long, articulate, organized, and logical correspondence to advocate for herself and reflect that she was well aware of her medication schedule at all times. Admin. R. 41-42, 68-69, 95, 143-45, 243, 275–76, 319, 320-22, 325, 334-35, 338, 690, 902, 905, 906, 933-37, 943-44, 949, 988-89, 1006.

In sum, the ALJ could reasonably find Walters's activities inconsistent with the limitations she alleged. Therefore, her activities provide a proper basis for the ALJ's adverse credibility determination. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ appropriately found that Walters's persistent drug seeking behavior and manipulation of her health care providers suggested that her statements about the intensity of her subjective pain and associated functional limitations were unreliable. Admin. R. 38-39. Evidence of Walters's drug seeking behavior is pervasive throughout the record from before her alleged onset of disability through the expiration of her insured status. Admin. R. 151, 175, 211, 552-53, 555.

She was unable to abide by her pain medication contracts and many of her medical records are actually correspondence with physicians centered on obtaining early refills of short acting narcotics. Admin. R. 440, 483, 550, 840, 905, 906, 930, 933, 986, 1053, 1067, 1069, 1074, 1106. She failed to comply with treatment recommendations for behavioral non-narcotic modalities of pain control and to discontinue short acting narcotics and benzodiazepines. Admin. R. 229, 530. This evidence supports an adverse inference as to Walters's credibility regarding the intensity of her symptoms. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

The ALJ's findings are supported by abundant evidence and show that he did not arbitrarily discount Walters's credibility. The reasoning is clear and convincing and I find no error in the ALJ's credibility determination. *Carmickle*, 533 F.3d at 1160; *Tommasetti*, 533 F.3d at 1039.

## III.    Medical Opinions

Walters contends the ALJ gave insufficient weight to the medical opinions of Paul Chung, M.D., Karyn Ofa, D.O., and William Melcher, M.D. Their treatment records are summarized in the preceding section of this opinion.

In addition to the treatment described previously, Drs. Chung and Ofa provided opinion letters in support of Walters's disability claim. Dr. Chung wrote several times that Walters would have difficulty working full time on a sustained basis, even at light or sedentary exertion. Admin. R. 641-44. In another letter he suggested that she had cognitive impairment resulting from her medications, fatigue, pain with prolonged sitting, standing, or walking, and lifting ability limited to 15 pounds. Admin. R. 800. Dr. Ofa wrote that it would be difficult for Walters to maintain any employment due to her medical condition and the high doses of narcotics she was taking. Admin. R. 803, 1256. Walters contends these letters should be given controlling weight.

The ALJ discussed these opinions at length, but ultimately gave them little weight relative to other evidence he found more reliable. Admin. R. 37-43. An ALJ can reject a physician's opinion in favor of the opinions of other physicians, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The disability opinions of Drs. Chung and Ofa were inconsistent with other medical opinions and findings. Dr. Jhansale said that despite her request for a disability letter, Walters functioned adequately. Admin. R. 555. Dr. Melcher asked her to return to work. Admin. R. 161. Dr. Chung said that her activities showed she was "quite functional physically." Admin. R. 548. Dr. Zaharoff said that despite her chronic pain and fibromyalgia diagnosis, Walters could walk, sit, lift, and engage in postural activities without restriction through an eight-hour day. Admin. R. 818-22. Drs. Green, Kolilis, and Smith found no limitations in mental function that would preclude routine work. Admin. R. 158-60, 376-81, 809, 815. The ALJ found these opinions were more reliable because they were more consistent with the record as a whole and less reliant on Walters's subjective description of her limitations.

With respect to the statements in these letters that Walters would be unemployable or would have difficulty maintaining employment, these are not medical opinions about her capabilities, but vocational opinions that require expertise medical doctors do not have. An ALJ must consider such opinions, but they cannot be given controlling weight or special significance. 20 C.F.R. § 404.1527(e); SSR 96-5p, 1996 WL 374183, *2-3.

Drs. Chung and Ofa did not identify clinical findings to support their disability opinions. Indeed, as described previously, the medical records provide very little clinical evidence of

functional limitations.  The primary source of such evidence is Walters herself.  An ALJ may

discount the disability opinions of treating physicians if they are conclusory and unsupported by

clinical findings.  *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999).

The medical records reflect that Drs. Chung and Ofa relied primarily on the diagnostic

findings of others and the subjective description of limitations provided by Walters. For example,

the limitations in Dr. Chung's letter appear to restate the explanation Walters gave him when she

quit working.  Admin. R. 800.  When Walters asked Dr. Ofa to write a letter in support of her

disability claim, she provided a subjective summary of the limitations preventing her from working.

Admin. R. 881.  The ALJ's finding that Drs. Chung and Ofa relied primarily on Walters's subjective

description of her limitations can reasonably be inferred from the evidence and the absence of

clinical findings.  An ALJ may reject a treating physician's opinion that is premised primarily on

subjective complaints that the ALJ properly found unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144,

1149 (9th Cir. 2001).

The ALJ also pointed out that Walters was skilled at manipulating her physicians in order

to independently manage her health care.  Admin. R. 38-39.  The record reflects that Walters

engaged in independent medical research and self diagnosis and directed her treatment.  Most

notably, as described previously, Walters was able to overcome the recommendations of addiction

medicine specialists, psychiatrists, and others who recommended that she discontinue using opiates

due to her dependence problems.  Her fibromyalgia specialists said the most effective therapies were

behavioral and that if pain medication were used, it should not be short acting narcotics.  Despite

these recommendations, Drs. Chung and Ofa repeatedly acquiesced in her preferred treatment with

high doses of short acting narcotics.  The ALJ could reasonably infer from this that Drs. Chung and

Ofa might be susceptible to manipulation regarding their disability opinions, as well. In addition, the ALJ found that the disability opinions did not account for the activities Walters engaged in, which showed her functional capacity far exceeded what Walters claimed.

With respect to Dr. Melcher's opinion, Walters objects that the ALJ did not refer to him by name and argues that the ALJ improperly ignored two treatment notes. Plf's Br. 25. The first note relates to a consultation in June 2002, in which Dr. Melcher noted that Walters had a history of chronic nonmalignant pain and fibromyalgia. He acceded to Walters's request for a form of treatment about which he said "I have not seen good results with this therapy in the past; however, the patient said it is suppose to be most effective." Admin. R. 500. To the extent this amounts to an opinion that Walters had a valid diagnosis of chronic pain and fibromyalgia syndrome, the ALJ did not reject it.

In the other treatment note, from August 2003, Dr. Melcher said he had reviewed Dr. Chung's letter and agreed with "work restrictions such as lifting less than 15 pounds and limited walking, standing, climbing." Admin. R. 443. As to this endorsement of Dr. Chung's letter, the ALJ adequately addressed the limitations in Dr. Chung's opinion as described previously.

The ALJ's findings are supported by substantial evidence and set forth specific, legitimate reasons for discounting the disability letters of Drs. Chung and Ofa. *Thomas v. Barnhart*, 278 F.3d at 957. The ALJ reasonably relied on other evidence he found more reliable. I find no error.

## IV.   Vocational Evaluation

In April 2009, more than a year after her insured status expired, Walters underwent a vocational evaluation administered by Peggy Wright, a rehabilitation counselor. Wright reported that Walters was unable to complete a majority of the assessments due to subjectively reported pain,

fatigue, and cognitive deficits. Walters had severely substandard scores in basic math, ruler reading, sentence structure concepts, and written communication. On tasks involving upper extremity range of motion, total body range of motion, dexterity, simulated assembly, and assembly, Walters either failed to complete the assessment or achieved extremely low scores. Wright attributed her low scores to poor endurance and an inability to absorb and follow instructions. She believed Walters gave good effort. Wright opined that Walters would not be employable in competitive work because she could not repetitively grasp or engage in fine manipulation, could not keep her neck in a static or flexed position, and demonstrated inconsistent and unacceptable cognitive and productivity performance. Admin. R. 1205-13.

An ALJ is required to consider and give due weight to all relevant evidence in the case record, including opinion evidence from non-medical sources who have seen the claimant in a professional capacity. An ALJ must consider such evidence and provide germane reasons in order to properly disregard it. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001).

Here, the ALJ discussed Wright's evaluation, but determined it was entitled to no weight in the disability determination. Admin. R. 42. The ALJ did not agree with Wright's statement that Walters gave full effort in the evaluation. Because much of her poor performance was attributed to subjectively reported fatigue, pain, and inability to absorb instructions, Walters's lack of credibility and history of manipulative behavior gave the ALJ reason to doubt the validity of her effort. Wright's conclusions and Walters's poor performance were inconsistent with evidence from the relevant period of time. For example, the ALJ noted that her severely substandard performance on sentence structure and written communication was contradicted by numerous letters and emails to

doctors which showed she had good composition skills. Her poor performance on tasks involving range of motion, grasping, and fine manipulation were contradicted by physical examinations showing she had no limitations in these areas. Likewise, several psychological evaluations revealed no cognitive deficits. In sum, I find no error in the ALJ's evaluation of Wright's report.

## V.    Listing of Impairments

Walters contends the ALJ should have found that she satisfied the criteria for presumptive disability under Listing 14.06 *Undifferentiated Connective Tissue Disorder* or Listing 14.09 *Inflammatory Arthritis* under the regulatory Listing of Impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P. The ALJ considered the two Listings and found that the reliable evidence did not support either the diagnostic criteria or the severity criteria. Admin. R. 31-32. Walters contends she is markedly limited in three broad categories of function, *viz.* activities of daily living, maintaining social functioning, and sustained concentration, persistence, or pace. Walters relies on evidence the ALJ properly discounted, however, and the evidence he found reliable does not support her contention.

Because I find the ALJ properly evaluated the evidence and reached conclusions that are supported by substantial evidence, I must affirm the ALJ's step three determination even if the evidence could rationally be interpreted in the manner urged by Walters. *Robbins*, 466 F.3d at 882; *Batson,* 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40. I find no error in the ALJ's determination that Walters failed to satisfy the criteria of an impairment in the regulatory Listing of Impairments.

## VI.    RFC Assessment

Walters contends the ALJ's RFC assessment failed to accurately reflect all of her functional limitations. Again, however, Walters relies only on evidence that the ALJ found unreliable. An

ALJ's RFC assessment need not include limitations the ALJ finds unsupported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Here, the ALJ's RFC assessment reasonably captures all the limitations supported by the evidence he found reliable. Accordingly, there is no error in the RFC assessment.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this  8  day of August, 2014.

Robert E. Jones, Senior Judge
United States District Court